UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BROOKLYN 13TH STREET HOLDING CORP.,

               Plaintiff,

-against-

NEXTEL OF NEW YORK, INC.,

               Defendant.
----------------------------------------------------------------x

**NOT FOR PUBLICATION**
<u>MEMORANDUM AND ORDER</u>
11-CV-1048 (CBA) (RLM)

AMON, Chief United States District Judge:

      Plaintiff filed this action alleging causes of action for breach of contract, trespass, injunctive relief, and indemnification arising from defendant's alleged failure to remove wireless communication equipment from the roof of 126 13th Street, Brooklyn, New York, which is owned by plaintiff. The action was removed to this Court on March 4, 2011 on the basis of diversity jurisdiction.[1] Plaintiff sent a letter to the Court dated April 21, 2011 stating that plaintiff intended to proceed only on its first and fourth causes of action for breach of contract and indemnity. Plaintiff's second and third causes of action are accordingly dismissed. Defendant now moves to dismiss the complaint in full pursuant to Fed. R. Civ. Pro. 12(b)(6), arguing that the plain and unambiguous language of the agreements upon which plaintiff purports to rely does not provide for the affirmative obligations plaintiff seeks to enforce, and that plaintiff's claim for indemnity is otherwise meritless. For the reasons stated below, the complaint is dismissed in full.

## BACKGROUND

      On March 30, 2001, plaintiff and defendant entered into a Communications Site Lease

---

[1] Defendant asserts that the amount in controversy is greater than $75,000, and that plaintiff is a New York corporation, with its principal executive offices in Kings County, New York, while defendant is a Delaware corporation, with its principal executive offices in Overland Park, Kansas.

1

Agreement (the "Lease" or the "Site Lease"). (Complaint ¶ 4.) Under the terms of that agreement, defendant leased approximately two hundred (200) square feet of interior space in the commercial premises located at 125 13th Street, Brooklyn, NY (the "Building") and space either adjacent to or on the roof of the Building, as well as access and utility easements for "any activity in connection with the provision of communications services." (Lease, §§ 1, 2; Complaint ¶ 4.) The term of the lease was for five years commencing on the date of defendant's commercial occupation of the leased premises, with four successive, automatic five year extensions subject to defendant's option. (Lease, § 4.) According to Section 19(a) of the Lease, any amendments to it must have been in writing and executed by both parties. (See Lease § 19(a).)

Although not pleaded in its complaint, plaintiff asserts that on February 16, 2007, Mr. Feinman, President of Brooklyn 13th Street Holding Corp., sent a letter to defendant regarding plaintiff's tentative plan to construct an additional story onto the Building. (Feinman Decl., Ex. A.) Plaintiff further asserts that in his February 16, 2007 letter, Feinman informed defendant that plaintiff desired to have defendant's antennas, which occupied the roof of the Building, relocated to the new roof. Feinman also stated that plaintiff would assume all costs in connection with the relocation of defendant's antennas. (Feinman Decl., Ex. A.)

Defendant sent plaintiff a letter dated October 24, 2007 purporting to "memorialize our understanding regarding the relocation of the above-referenced wireless communications facility" (the "Letter Agreement"). (Feinman Decl., Ex. B, at 1.) The Letter agreement states that defendant would, "consider moving or raising the equipment." (Letter Agreement ¶ 2) The Letter Agreement was faxed to plaintiff. Accompanying the fax were two "Purchase Order Request Form[s]" from National Grid Wireless. (Feinman Decl., Ex. B, at 2-3.) A Request Form dated April 9, 2007, signed by Kimberly Fuse, identifies the requested "Task Type" as "LL

2

requested –Antenna Relo." (Id. at 2.) A Request Form dated July 2, 2009 and signed by Eric Demarest also identifies the requested "Task Type" as "Antenna-RadCenter Relo/Change." (Id. at 3.) Both Request Forms are stamped, "Approved." (Id. at 2-3.)

Plaintiff alleges that the Letter Agreement constitutes an agreement whereby defendant confirmed its "undertaking to perform the relocation of its communications equipment." (Complaint ¶ 7.) Plaintiff further alleges that following the execution of the Letter Agreement, defendant undertook preparatory actions concerning the relocation of its equipment. (Complaint ¶ 8.) Plaintiff alleges that defendant did not relocate its communications equipment. (Complaint ¶ 9.) As a result, in letters from plaintiff to defendant dated December 14, 2009 and July 12, 2010, plaintiff states that it demanded that defendant relocate the equipment. (Complaint ¶ 10.) Plaintiff alleges that defendant failed to comply with plaintiff's demands and that such non-compliance caused plaintiff to suffer extensive damages. (Complaint ¶¶ 12-13.) On November 3, 2010, plaintiff sent defendant a "Notice of Termination" purporting to terminate the Site Lease. (Complaint ¶ 16.)

## DISCUSSION

### I.     Standard of Review

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). A complaint that contains only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1965. Neither will a complaint that contains only "naked assertion[s]" without "further factual enhancement." Id. at 1966.

Iqbal identifies a "two-pronged" approach to determining the sufficiency of a complaint. 129 S. Ct. at 1950. First, courts can "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. Second, they can then identify whether the complaint, stripped of its conclusory pleadings, "plausibly give[s] rise to an entitlement to relief." Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A court's "consideration [on a motion to dismiss] is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

## II.     Breach of Contract

Plaintiff alleges that by failing to remove wireless equipment from the roof of 126 13th Street, Brooklyn, New York, defendant breached its contract with plaintiff. Plaintiff claims that the Letter Agreement, dated October 24, 2007, constitutes a binding contract whereby defendant was obligated to relocate the equipment in question. (Complaint ¶¶ 5, 7.)

To state a claim for breach of contract under New York law,[2] a plaintiff must allege: (1) the existence of a contract; (2) that the plaintiff has performed his or her obligations under the contract; (3) that the defendant failed to perform his or her obligations thereunder; and (4) that plaintiff was thereby damaged. Crowley v. VisionMaker, LLC, 512 F. 2d 144, 151 (E.D.N.Y. 2007); see also W.B. David & Co. v. DWA Communs., Inc., No. 02 Civ. 8479, 2004 WL 369147,

---

[2] Neither party disputes that the Agreement between plaintiff and defendant is governed by New York law.

at *2 (S.D.N.Y. Feb. 26, 2004); Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ. 342, 1999 WL 544708, at *18 (S.D.N.Y. July 27, 1999). "In pleading these elements, a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue." Wolff v. Rare Medium, Inc., 171 F. Supp. 2d 354, 358 (citing Levy v. Bessemer Trust Co., N.A., No. 97 Civ. 1785, 1997 WL 431079, at *5 (S.D.N.Y. July 30, 1997)).

Defendant argues that plaintiff has failed to identify any provision of a contract that defendant breached. Plaintiff counters that the letter agreement unambiguously requires defendant to move the wireless equipment in question. To the extent the Court holds that there is no unambiguous requirement to move the equipment, plaintiff argues in the alternative that the agreement is ambiguous and thereby presents a question of fact.[3]

"In reviewing a written contract, a trial court's primary objective is to give effect to the intent of the parties as revealed by the language they chose to use," and thus the court "ordinarily looks only at the wording used by the drafters who presumably understood what they intended." Seiden Assoc., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 426, 428 (2d Cir. 1992) (citing Slatt v. Slatt, 64 N.Y.2d 966 (1985)). "[A]n interpretation that gives a reasonable and effective meaning to all the terms of a contract is generally preferred to one that leaves a part unreasonable or of no effect." Interstate Brands Corp. v. Bakery Drivers & Bakery Goods Vending Machines, Local Union No. 550, Intern. Broth. of Teamsters, 167 F.3d 764, 768 (2d Cir. 1999) (quotations and citations omitted).

---

[3] Although plaintiff suggested at a pre-motion conference held on April 15, 2011 that plaintiff might seek to argue that the contract in question was "implied in fact," plaintiff's response brief relies on the express terms of the contract. Likewise, the complaint refers only to defendant's alleged breach of a written contract. "[A] contract cannot be implied *in fact* where the facts are inconsistent with its existence . . . or where there is an express contract covering the subject-matter involved." Ludemann Elec., Inc. v. Dickran, 74 A.D.3d 1155, 903 N.Y.S.2d 532, 534 (2d Dep't 2010) (emphasis in original); see also Valentino v. Davis, 270 A.D.2d 635, 703 N.Y.S.2d 609, 612 (3d Dep't 2000) ("A contract may not be implied in fact from the conduct of the parties where it appears that they intended to be bound only by a formal written agreement."). The Court will not infer the existence of a contract "implied in fact."

It is "axiomatic that where the language of a contract is unambiguous, the parties' intent is determined within the four corners of the contract, without reference to external evidence." Feifer v. Prudential Ins. Co. of Am., 306 F.3d 1202, 1210 (2d Cir. 2002) (citing United States v. Liranzo, 944 F.2d 73, 77 (2d Cir. 1991)). However, "when the language of a contract is ambiguous, its construction presents a question of fact," which precludes summary dismissal. Jackson Heights Medical Group, P.C., v. Complex Corp., 222 A.D.2d 409, 411, 634 N.Y.S.2d 721, 722 (2d Dep't 1995) (citations omitted); see also Seiden Assoc., 959 F.2d at 428 ("Where the language used is susceptible to differing interpretations, each of which may be said to be as reasonable as another, and where there is extrinsic evidence of the parties' actual intent, the meaning of the words becomes an issue of fact . . . .").

Ambiguous language is "that which is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of customs, practices, usages and terminology as generally understood in the particular trade or business.'" Seiden Assoc., 959 F.2d at 428 (quoting Walk-In Medical Centers, Inc. v. Breuer Capital Corp., 818 F.2d 260, 263 (2d Cir. 1987)). Conversely, "[t]he language of a contract is not made ambiguous simply because the parties urge different interpretations," or "where one party's view 'strains the contract language beyond its reasonable and ordinary meaning.'" Id. (quoting Bethlehem Steel Co. v. Turner Construction Co., 2 N.Y.2d 456, 459 (1957)).

The Court finds that the contract is, in relevant part, unambiguous, and that under the express terms of the contract, defendant was at most required to, "*consider* moving or raising the

equipment" in question.[4] (Letter Agreement ¶ 2 (emphasis added).) "To consider," is defined, in pertinent part, as, "to think about carefully: as (a) to think of especially with regard to taking some action . . . (b) to take into account." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/consider. The Court finds plaintiff's arguments, which in effect seek to omit that word "consider" out of the operative language of the contract, unpersuasive.

Plaintiff first argues that the letter agreement states that the "parties have an 'agreement'." (Pl. Mem. 7.) However, defendant does not dispute that the October 24, 2007 letter constitutes a binding agreement. Plaintiff next argues that the phrases, "Nextel 'would be moving its equipment' and that all of its costs in doing so 'will be reimbursed by the lessor'" demonstrate, "a present intention, not some contingent or dependent obligation." (Pl. Mem. 7.) It should be noted that the first phrase is in fact, "[Nextel] would *not* be moving its equipment," (Letter Agreement ¶ 2 (emphasis added).) Additionally, both renditions of that phrase remove it from its context. In pertinent part, the agreement states, "Pursuant to Section 15 of the Agreement, [Nextel] is entitled to quiet enjoyment of the site, which means that but for Lessor's request, [Nextel] would not be moving its equipment." (Id.) That phrase cannot be read to create an affirmative obligation on the part of defendant. Instead, it is clearly background for the affirmative statement, "[Nextel] is willing to consider moving or raising the equipment." (Id.)

Likewise, in full context, the agreement employs the phrase, "will be reimbursed by the lessor," as follows: "[Nextel] is *willing to consider* moving or raising the equipment, but the relocation *would be* for the benefit of the Lessor, and it is understood that [Nextel]'s costs and

---

[4] Although neither party argues as such, it would appear the letter agreement is in fact a unilateral contract whereby plaintiff was required to reimburse defendant should defendant undertake the requested relocation. See, e.g., Papa v. New York Telephone Co., 72 N.Y.2d 879, 881 (1988).

expenses will be reimbursed by Lessor." (Letter Agreement ¶ 2 (emphasis added).) The only affirmative obligations potentially created by that sentence are for defendant to *consider* relocating the equipment, and for plaintiff to reimburse defendant if it were to do so. In addition to the "willing to consider" language already discussed, the agreement employs the conditional phrase, "the relocation *would be* for the benefit of the Lessor." (Id. (emphasis added).) The use of the conditional suggests that the relocation may or may not occur.

Plaintiff seeks to bolster its argument that the Court should ignore the plain meaning of the word "consider" by referencing two "Purchase Order Request Form[s]" from National Grid Wireless that were attached to the Letter Agreement as part of defendant's fax. The requested "Task Type[s]" listed on the forms are, "LL requested –Antenna Relo," and, "Antenna-RadCenter Relo/Change." (Feinman Decl., Ex. B, at 2-3.) Both forms are stamped, "Approved," apparently by agents of the defendant. (Id.) Even if the Court were to consider such documents as part of the contract, they would not alter the plain meaning of the letter agreement. Indeed, such forms are consistent with a contract by defendant to consider moving the equipment in question. Plaintiff's efforts to create ambiguity with reference to some arguably awkward phrasing in other parts of the letter agreement are likewise unavailing. Accordingly, the Court grants defendant's motion to dismiss plaintiff's breach of contract claim.

### III.  Indemnity

Plaintiff's remaining cause of action is for indemnity. Although the letter agreement does not contain an indemnity clause, the Site Lease provides, in relevant part, "Lessee shall indemnify and hold Lessor harmless from all claims (including attorneys' fees, costs and expenses of defending against such claims) arising from the negligence or willful misconduct of Lessee or Lessee's agents or employees in or about the Property . . . . The duties described in Paragraph 18

survive the termination of this Agreement." (Calagione Decl., Ex. A, at ¶ 18.) Plaintiff's theory apparently is that by allegedly breaching the Letter Agreement, plaintiff committed "willful misconduct." First, for the reasons stated above, defendant did not breach the Letter Agreement. Second, even if defendant had breached the Letter Agreement, such an action could not provide the basis for a claim of "willful misconduct." "'Willful' is a term of tort, not contract, . . . it is synonymous with 'wanton' and 'reckless.'" Metropolitan Life Ins. Co. v. Noble Lowndes Intern., Inc., 192 A.D.2d 83, 90, 600 N.Y.S.2d 212 (1st Dep't 1993). An intentional breach of contract, without more, cannot constitute "willful" misconduct. Id.

In plaintiff's response brief, plaintiff appears to argue that it is entitled to indemnification as part of consequential damages. Plaintiff does not cite a single case, nor could it, suggesting that litigation costs should be considered as part of consequential damages. "[U]nder the American rule, legal fees are not ordinarily recoverable as an element of damages." Geler v. National Westminster Bank USA, 770 F. Supp. 210, 213 (S.D.N.Y. 1991). Accordingly, the Court grants defendant's motion to dismiss plaintiff's fourth cause of action for indemnity.

**IV.     Relocation Costs and Expenses**

As part of defendant's motion to dismiss the complaint, defendant argues that the Court should direct plaintiff to reimburse defendant for relocation costs and expenses, attorney's fees, and litigation costs. As for relocation costs and expenses, defendant appears to premise its motion on a claim for breach of contract. However, defendant has not answered the complaint, and, thus, has pleaded no claim for affirmative relief. With respect to attorney's fees and costs, defendant relies on that portion of the Site Lease which provides, "Lessor shall indemnify and hold Lessee harmless from all claims (including attorneys' fees, costs and expenses of defending against such claims) arising or alleged to arise from the acts or omissions of Lessor or Lessor's

9

agents, employees, licensees, invitees, contractors or other tenants occurring in or about the Property." (Calagione Decl., Ex. A, at ¶ 18.) The present claims do not arise and are not alleged to arise from the "acts or omissions of Lessor or Lessors agents, employees, licensees, invitees, contractors or other tenants occurring in or about the Property." Rather, they arise from defendant's alleged breach of contract. Accordingly, the Court will not award attorney's fees or costs at this time.

## CONCLUSION

The Court grants defendant's motion to dismiss the complaint in full. The Clerk of Court is directed to enter judgment in accordance with this Order and to close the case.

        SO ORDERED.

Dated:      Brooklyn, New York
              December 30, 2011

                                      /s/
                                    Carol Bagley Amon
                                    Chief United States District Judge